THE BOARD OF SUPERVISORS OF MONROE COUNTY, RESPONDENT, *v.* FREEMAN CLARKE, APPELLANT, IMPLEADED, ETC.

*County treasurer — when an increase of his duties does not discharge his sureties — his books and reports are admissible as against his sureties — interest — when it is allowed upon an unascertained balance.*

Upon the trial of this action, brought against the sureties upon the official bond of a county treasurer, it appeared that after its execution his duties and responsibilities had been greatly increased by acts of the legislature and resolutions of the board of supervisors, he having been required thereby to borrow large sums of money, and issue bonds therefor, to pay bounties to recruits. Some of the defalcations complained of occurred in the bounty fund, and the residue in the other funds intrusted to his care.

*Held*, that the sureties were not liable for the wrongful acts or omissions of the treasurer in so far as they affected the bounty fund, but that they were liable for his failure to faithfully care for and pay over the other funds intrusted to his care.

The books which the county treasurer is required by law to keep, and his accounts and official reports to the board of supervisors, are admissible as against him and his sureties to prove what funds have come into his hands.

When a county treasurer fails to pay over money in his hands interest should be charged upon the amount found to be due, from the time that his successor qualified and entered upon the discharge of the duties of his office.

APPEAL from a judgment for $75,068.68 in favor of the plaintiff, entered upon the report of a referee.

*Cogswell & Bentley*, for the respondent.

*J. A. Stull*, for the appellant.

HAIGHT, J.:

This action is brought against the defendant as surety of Jason Baker, on his official bond as county treasurer of Monroe county, during the years 1861, 1862, 1863, and part of 1864. The bond ran to the plaintiff as obligee, and was conditioned : "That if the said Jason Baker shall faithfully execute the duties of said office, and shall pay according to law all moneys which shall come into his hands as such county treasurer, and shall render a just and true account thereof to the board of supervisors, or to the comptroller of the State of New York when thereunto required, then this obligation shall be void, but otherwise shall remain in full force and effect." Subsequently the duties of the treasurer were greatly increased by resolutions of the board of supervisors and acts of the legislature. The war of the rebellion coming on, he was required to go into the market and borrow large sums of money and issue bonds of the county therefor, for the purpose of paying bounties to recruits. Such funds passed into his hands as treasurer. Some of the defalcation complained of occurred in this bounty fund. The defendant now claims that such change in the character of the office greatly increased his risk as surety upon the bond, and the imposition of such new duties operates to discharge him from liability as surety. The referee has held that such surety is discharged as to the additional burden placed upon the treasurer subsequent to the giving of his official bond, and that he is not liable for the defalcation in the bounty fund ; but as to the other duties of the

treasurer, and obligations existing at the time of the executing of the bond, the sureties remain bound. The question here to be passed upon, therefore, is whether or not the imposition of the new duties discharged the defendant from all liability. There can be no doubt that as between private parties the law is, that any alteration in the obligation, in respect of which a person has become surety, without the consent of the surety, discharges him from all liability. As to the liability upon official bonds, where the duty of the officer has been changed, there has been some conflict in the authorities, but the law upon the question was settled in this State by the Court of Appeals in the case of *People* v. *Vilas*, reported in 36 New York, at page 459. That was an action against the sureties upon the official bond of a loan commissioner. Subsequently, and by act of the legislature, there was transferred to such commissioner, for the same purpose, moneys formerly held by another commissioner. The commissioner had become a defaulter to the amount of five hundred dollars in the funds so transferred to him, and to a larger amount in the original funds. It was held that the sureties were liable for the amount of the defalcation in both funds. The rule in that case was declared to be, that any alteration, addition or diminution of the duties of a public officer made by the legislature, does not discharge his official bond, or the sureties thereon, so long as the duties required are the appropriate functions of the particular office; that all such alterations are within the contemplation of the parties executing the bond; that imposing duties of another description and not appropriate to the office, would discharge sureties not coming within such contemplation. HUNT, J., in delivering the opinion of the court, then proceeds, saying: " If, however, this statute did alter the nature and duties of the office of commissioner in the manner alleged by the respondent, so that the peril of the sureties was increased, did it operate to release them entirely, or only as to liabilities arising from such additional duties? The case of the sureties for the performance of his duties by a public officer, is not precisely the same as if their principal was a party to an ordinary civil contract. His position is rather that of an agent or servant of the government, than a contracting party. In the present case certain duties were imposed upon commissioners by the laws in existence prior to 1850 when the sureties

assumed their responsibility. A subsequent law imposing additional duties, does not impair the prior laws, or the obligations under them. * * * The superadded duties have not affected the original duty; it remains in force, and the obligation for its performance is the same as if no new law had been passed. Why should not the obligation of the sureties for the original duty also continue?" From this opinion it is quite evident that if the court had not held that the sureties were liable for the default occurring in both funds, they would have been held liable for the default in the original fund. In the case at bar, the giving to the treasurer the care of the bounty fund in no way changed his duties or liabilities as to the other funds that were under his control. His duties in reference thereto remained the same and unchanged. If the imposing of the new duty, caring for the bounty fund, was not within the contemplation of the sureties at the time of executing his official bond, they may properly be relieved from liability as to such fund, but why should they be relieved from liability as to the other funds which by law the treasurer was the custodian of, at the time of executing the bond? It appears to me that there is no good reason for relieving them where the account of the fund is kept separate and distinct. The Court of Appeals of Virginia have so held in the case of the *Commonwealth* v. *Holmes*, reported in 25 Grattan, pages 771 to 778. In that case the action was against sureties for a town collector. There had been superadded to his duties that of constable in relation to the collection of small claims, and it was argued that such superadded duties relieved the sureties upon his bond as collector from liability. The court, after remarking that the duties imposed would, under the English authorities, discharge his sureties, as appeared from the authority of *Pybus* v. *Gibbs*, says : " The principle thus formed by the English decisions does not commend itself to the judgment of this court as just and reasonable, and we should hesitate to follow it were there no authorities against it, but we have against it the opinion of the Supreme Court of the United States, in which, in an analogous case, Judge STORY says: ' The bond should be held good to the extent of the duties lawfully covered thereby.' This, we think, the more just and equitable rule." The case alluded to in the Supreme Court of the United States, is reported in 9 Whea-

ton, 720; *United States* v. *Kirkpatrick*. That was an action upon an official bond given by a collector of direct taxes. Subsequently, by act of congress, he was also made collector of internal duties. The district judge, in trying the case, held that the sureties were not liable for the defaults of the collector in the collection of internal duties, but that they were liable for the defaults in collection of direct taxes. The Supreme Court of the United States on review held that that was the true construction of the bond. The case of *Hatch* v. *Inhabitants of Attleborough* (reported in 97 Mass., 553) was an action upon the official bond of the town treasurer. The treasurer had been authorized by the town to hire recruits to fill its quota of soldiers, and he was authorized to pay a certain sum as bounty. The citizens of the town voluntarily contributed a large sum of money and paid the same over to the town treasurer for the purpose of having the same expended by him, together with the town moneys, in hiring recruits and paying bounties. Whilst it was held that the sureties were not liable for the money so voluntarily contributed and paid over to the treasurer, yet they were liable for the funds of the town that came into his hands as treasurer. Thus it will be seen that we have respectable authority holding that while sureties are not liable upon official bonds by reason of the subsequent imposition of new and different duties, materially changing the character of the office, they still are liable for the faithful discharge of the duties of the officer, existing at the time of signing the bond, where those duties have not been substantially or materially changed.

The appellant claims that the referee erred in deciding that there was anything whatever due on the bond; that the balance found by him to be due was based upon a fallacy, to wit, the adoption of the sum of $2,653.57 as due on the 1st day of October, 1861, and starting the account with that balance from that date. It is argued that there is no evidence showing that there was any such sum actually on hand at that time. It will not here be contended that the sureties upon this bond can be held liable for any default of the treasurer during his previous term of office, and when the defendant was not a surety upon his bond. It is only for the defaults occurring during the term of office for which he was surety that he can be held liable. If, therefore, the treasurer did not have this

sum on hand on the 1st day of October, 1861, then the referee was in error in starting the account from that date, and with that sum on hand as a balance. The treasurer is by law required to keep books of account of the various funds which come into his hands as treasurer. He is also required to make an annual report to the board of supervisors. The condition of the bond is that he will render a just and true account to such board. His books and accounts and official reports made to the board of supervisors are evidence against him and his sureties.

In making his report to the board of supervisors in October, 1861, he reported this sum as balance on hand. (Folio 89 of exhibits.) In his report next year, at folio 170 of exhibits, he reports the same sum as balance from last year. In his settlement book of 1861, the same sum is entered as balance. From these books and reports it would appear that this sum was actually on hand. They at least become *prima facie* evidence to that effect; and in the absence of proof showing that no such sum was in fact on hand, we must hold that the referee was correct in his finding upon this question.

It is claimed again, on the part of the appellant, that the referee erred in deciding that no part of the balance which he found to be unaccounted for, and due from Baker, the treasurer, to the county at the time of his discharge, was left in the treasury. Jason Baker, the treasurer, died on the 26th day of September, 1864, eight days before the end of his term. Samuel Scoville was his successor in office, and he entered on the duties of his office on the 4th day of October, 1864. All the accounts charged against the deceased treasurer, allowed by the referee, came to his hands before his death.

The statute requires that upon the death of a county treasurer, all the books and papers belonging to his office, and all moneys in his hands by virtue of his office, shall be delivered to his successor in office, upon the oath of his executor or administrator. Scoville, his successor, testified that no money was paid over to him for or on account of Baker, as treasurer. Mr. Monger, was his executor, and he testified, at folio 795 of case : " I do not think there were any assets in money — nothing but obligations of various kinds, which I converted into money. I do not think there was over ten dollars

in money." That he does not recollect of there being any bank account where there was anything coming to him as treasurer; that he found where he had his accounts with one or two banks, but that there was nothing to his credit in any of the bank accounts. In answer to the question as to whether any security or securities payable to Jason Baker, as treasurer, were assigned to him, as such, coming to his knowledge, the executor answered: "I cannot answer positively; my impression would be there was very little, if any; about everything was in his name individually." From this evidence, I am of the opinion that the referee properly found that the balance unaccounted for was not in the treasury at the time of his decease.

Again, it is claimed that no demand or request for the payment of the balance was ever made, either to Baker or to Baker's executors, after his death, and for this reason no recovery can be had. Baker was a public officer. He should have had on hand upwards of $36,000 in cash. As treasurer of the county he had no right to invest the same in individual property of his own. If it was not on hand, it was because he had wrongfully converted it, for which he would be liable criminally. In such cases no demand is necessary before action is brought to recover the same. The condition of the bond does not require it. The condition is that he shall pay according to law, *not upon demand*, all moneys which shall come to his hands; that he shall render a just and true account thereof, etc. His last report rendered was not a just and true account. He did not pay according to law these moneys, nor account for the same. On his death his executor did not pay over the moneys on oath, as he was required to by law, and for the very good reason that they were not found on hand.

At the annual meeting of the board of supervisors in 1863, there was raised the sum of $53,500, to pay bonds falling due on the fifteenth day of February following, which bonds had been issued by the treasurer of the county, under and by virtue of a resolution of the board of supervisors, passed the 21st day of November, 1862, for the purpose of borrowing money upon the credit of the county, with which to pay bounties to volunteers. This item does not appear in the column of debit items eliminated from the amended bill of particulars, page 4, sundry exhibits.

Under the ruling of the referee that the surety should not be held liable for defaults occurring in the bounty fund, we are unable to see why this item should not have been included. Upon reference to the revised bill of particulars, we find : " Credit item number 124, for interest on bounty bonds, $7,000 ; " also, credit item number 126, bounty bonds of 1862, $33,000 ;" making a total of $40,000, which appears to have been paid out of this fund of $53,500 ; and these items do not appear in the column of credit items eliminated from the bill of particulars. Deducting the $40,000 from the $53,500, leaves a balance unaccounted for of $13,500. Under sections 5, 6 and 19 of chapter 15 of the Laws of 1863, the board of supervisors were authorized to raise money by tax to pay off the bonds theretofore issued, and providing that the surplus, if any, thereafter, should be paid into the county treasury for the ordinary expenses of the county. It therefore becomes necessary to inquire whether this $13,500 was transferred to the general fund and used in paying the ordinary expenses of the county. Upon an examination of the case, we are unable to find any evidence showing that this was ever done. We cannot assume that it was. Large sums appear to have been taken by the treasurer and converted to his own use, and, from aught that appears, this item may have been one of the sums converted. We are, therefore, of the opinion that the sum of $13,500 should have been eliminated from the amended bill of particulars.

From the report of the committee appointed to examine the books and accounts of the treasurer (appearing at page 54 of the exhibits), it appears that the sum of $29,333.07 had been collected by the treasurer during his previous term of office and had not been accounted for. It subsequently appears that a settlement took place between the treasurer and the county by which he was allowed a salary, above amounts retained, of $4,000 per year, and also compensation, paying bounties to volunteers, of $1,243.57 ; and the balance was charged over to him and accounted for. The treasurer in his annual report to the board of supervisors reports this settlement in the following words : " Herewith is also a statement of returned taxes *paid* into *this* office from the year 1852 to 1862, inclusive, which I take great pleasure in saying is satisfactorily and amicably adjusted." Then follows his report in detail,

with balance as cash on hand. This report furnishes *prima facie* evidence that the money was in fact paid into the treasury, and in the absence of evidence showing the contrary we must hold that the finding of the referee was correct.

Other questions were raised on the argument pertaining to various items in the account passed upon by the referee, but after a review of the evidence we are of the opinion that the findings of the referee are correct.

The amount so found due by the referee was by law required to be paid over to Mr. Baker's successor in office upon his qualifying and entering upon the discharge of his duties. This was not done. The county was entitled to interest upon such sum from that time. This is not an unliquidated claim, within the authorities, where interest has been refused.

Judgment reversed and new trial ordered before another referee, with costs to abide the event, unless the plaintiff stipulates within twenty days that judgment be reduced in the sum of $13,500, with interest thereon from the 1st day of October, 1864. If stipulation is given to that effect, the judgment affirmed for the amount so reduced, without costs of the appeal to either party.

Smith, P. J., and Hardin, J., concurred.

So ordered.